UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**EDWIN RITTER JONAS, III**,<br><br>Debtor. | Case No. **10-60248-7** |
| **EDWIN RITTER JONAS, III**,<br><br>Plaintiff.<br><br>-vs-<br><br>**LINDA B JONAS**,<br><br>Defendant. | Adv No. **10-00031** |

## MEMORANDUM OF DECISION

At Butte in said District this 12th day of August, 2010.

Defendant Linda B. Jonas' ("Linda") Motion (Docket No. 5) to Dismiss Counts III, IV and V of the complaint filed by the Plaintiff/Debtor Edwin Ritter Jonas, III ("Edwin"), her former spouse, based on FED. R. CIV. P. 12(b)(1) (applicable in this adversary proceeding under F.R.B.P. 7012(b)) and the *Rooker-Feldman* doctrine[1] is pending in this adversary proceeding. Plaintiff filed an objection and a hearing was held on the Motion at Missoula on June 10, 2010. The

---

[1] The *Rooker-Feldman* doctrine takes its name from two Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

1

parties appeared represented by counsel. Linda was represented by Quentin Rhoades ("Rhoades") of Missoula. Edwin was represented by attorney Edwin A. Murphy ("Murphy") of Missoula. The parties agreed that the Motion involved a legal question, and no testimony or exhibits were admitted. The Court granted the parties additional time to file briefs, which have been reviewed by the Court together with the pleadings and applicable law. This matter is ready for decision. For the reasons set forth below Linda's Motion will be granted.

## BACKGROUND FACTS & PROCEDURAL HISTORY

Edwin filed a voluntary Chapter 11 petition on February 19, 2010. The Chapter 11 case was converted to Chapter 7 on June 11, 2010.[2]

Linda filed Proof of Claim No. 1 on March 19, 2010, and filed an amended Claim 1 on March 24, 2010. Linda's Claim 1 asserts a secured claim and priority claim[3] in the amount of $1,091,391.21, based on a Notice of Filing Foreign Judgment in Cause No. DV-09-388 in Montana Twentieth Judicial District Court, Lake County, dated December 2, 2009. That Notice, a writ of execution and an order and judgment entered in Docket No. FM-04-259-89 in the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, are attached to Linda's amended Claim 1.

Edwin initiated this adversary proceeding by filing a complaint against Linda on March 30, 2010. The complaint avers common facts, and then asserts five (5) claims for relief[4],

---

[2]Debtor's motion to vacate the Order of conversion is pending.

[3]Claim 1 specifies the priority of the claim as a domestic support obligation under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

[4]Count I (Voidable Preferential Transfer based on 11 U.S.C. Sec. 547); Count II (Determination of Estate Interest in Property); Count III (Objection to Linda's Proof of Claim 1);

including Claim III objecting to Linda's claim. The prayer of the complaint seeks to void Linda's judgment lien against property of the estate, to disallow Linda's Claim 1 in its entirety, and for damages against Linda for filing her Proof of Claim and for tortious abuse of the legal process.

On April 20, 2010, Linda filed an answer denying liability and requesting dismissal of the complaint with prejudice, and requesting costs and attorney fees. Linda also filed on April 20, 2010, her Motion to Dismiss and brief (Docket No. 5).

Linda moves to dismiss Counts III, IV and V of the complaint based on FED. R. CIV. P. 12(b)(1) for lack of jurisdiction. Her Motion contends that the *Rooker-Feldman* doctrine deprives this Court of jurisdiction to review or reverse the New Jersey judgment, as Plaintiff asks in Counts III, IV and V. She argues that Counts III, IV and V seek a determination of the same facts and issues which have already been decided in the New Jersey court, where the judgment was affirmed on appeal and is final.

Linda points out that the New Jersey courts considered Edwin's contentions of fraud against the court[5] that he now raises in Counts III, IV, and V, but the New Jersey courts rejected them in part because of the fugitive disentitlement doctrine and Edwin's steadfast refusal to post bond, and his refusal to appear and comply with the state court orders, even to the point that a warrant was issued for his arrest.

Edwin filed an objection (Dkt. 8) arguing that the *Rooker-Feldman* doctrine applies only in a case where a plaintiff seeks to vindicate a federal right in federal court based on an argument

---

Count IV (Damages for Filing a False Claim); and Count V (Damages for filing the New Jersey judgment in Montana).

[5]On page 11 Linda states that the presiding judge in the New Jersey divorce case, Judge Page, has died.

3

that the state court either disregarded or misapplied. He argues that the doctrine does not apply in the instant case because there was a fraud on the New Jersey court, and that under New Jersey law and Montana law a judgment is not enforceable if it is obtained by fraud on the court. Edwin contends that Linda committed fraud on the New Jersey court by committing perjury by representing that she received no substantial property or money, and by failing to disclose that she did not hold money or property in trust as she was required by court order. Edwin argues that those matters have not been litigated in New Jersey courts because he was required to post a bond as a threshold to an accounting, and that bond requirement now is irrelevant since the case is in Chapter 11[6]. Edwin argues that the accounting is not inextricably intertwined with the issues decided in state court, since the New Jersey trial court refused to hear the accounting, citing *Fontana Empire Center, LLC v. City of Fontana*, 307 F.3d 987, 992 (9th Cir. 2002). Edwin concludes that the *Rooker-Feldman* doctrine does not apply and this Court has subject matter jurisdiction.

  Linda's reply briefs (Dkt. 11 & 18) contend that any credit to which Edwin is entitled for payments or transfers in an accounting arises under state law, not federal law, and that the New Jersey court imposed its judgment against Edwin based on the fugitive disentitlement doctrine as sanctions for his bald contempt for the New Jersey court system by refusing to appear. She repeats that *Rooker-Feldman* applies and this Court lacks jurisdiction to consider Counts III, IV or V and should dismiss those Counts.

  The Court granted Edwin additional time to file a supplemental brief (Dkt. 17). In Dkt. 17 Edwin repeats that Linda obtained the 2006 judgment in the New Jersey court by a fraud on

---

[6]Now the case is in Chapter 7.

the court, and by representations under penalty of perjury that she had not been paid and placed money in a trust account. He argues that the fugitive disentitlement doctrine is not a license to commit fraud on the court, and that Linda now admits that he has not been given credit while in the New Jersey divorce case she told the court no payments had been made. Lastly Edwin suggests that the New Jersey courts have not rendered a final judgment on the amount owed, so *Rooker-Feldman* does not apply and the motion to dismiss should be denied.

## DISCUSSION

Linda's Motion to Dismiss Counts III, IV and V is based on the *Rooker-Feldman* doctrine. The Ninth Circuit discussed the *Rooker-Feldman* doctrine at length recently in *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010):

> The *Rooker-Feldman* doctrine takes its name from two Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). It stands for the relatively straightforward principle that federal district courts do not have jurisdiction to hear de facto appeals from state court judgments. [*Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003)]. The jurisdiction prohibition arises from a negative inference drawn from 28 U.S.C. § 1257 which grants jurisdiction to review state court decisions in the United States Supreme Court. *Kougasian v. TMSI, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004) (citation omitted). Because it grants jurisdiction to the Supreme Court, section 1257 impliedly prohibits lower federal courts from reviewing state court decisions. *Id.*
>
> Stated simply, the *Rooker-Feldman* doctrine bars suits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1516, 161 L.Ed.2d 454 (2005). In practice, the *Rooker-Feldman* doctrine is a fairly narrow preclusion doctrine, separate and distinct from res judicata and collateral estoppel. *See Noel*, 341 F.3d at 1162-64.
>
> We have previously explained how federal courts should distinguish a forbidden de facto appeal of a state court decision that is barred by *Rooker-*

5

> *Feldman* from a suit that is barred by other preclusion principles. A suit brought in federal district court is a "de facto appeal" forbidden by *Rooker-Feldman* when "a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Id.* at 1164. In contrast, if a plaintiff "asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *Id.*

In 2006 the Supreme Court repeated: "*Rooker-Feldman* is not simply preclusion by another name. The doctrine applies only in 'limited circumstances,' *Exxon Mobil, supra*, at 291, 125 S.Ct. 1516, where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance v. Dennis*, 546 U.S. 459, 466, 126 S.Ct. 1198, 1202, 163 L.Ed.2d 1059 (2006).

> Earlier the Ninth Circuit explained the *Rooker-Feldman* doctrine as follows:
>
> In its routine application, the *Rooker-Feldman* doctrine is exceedingly easy. A party disappointed by a decision of a state court may seek reversal of that decision by appealing to a higher state court. A party disappointed by a decision of the highest state court in which a decision may be had may seek reversal of that decision by appealing to the United States Supreme Court. In neither case may the disappointed party appeal to a federal district court, even if a federal question is present or if there is a diversity of citizenship between the parties. *Rooker-Feldman* becomes difficult – and, in practical reality, only comes into play as a contested issue – when a disappointed party seeks to take not a formal direct appeal, but rather its de facto equivalent, to a federal district court.

*Noel v. Hall*, 341 F.3d at 1155.

The Ninth Circuit explained that the *Rooker-Feldman* doctrine is a statute-based doctrine based on negative inferences of relevant statutes, the modern day successors to which are 28 U.S.C. §§ 1331, 1332, and 28 U.S.C. 1257. 341 F.3d at 1154-55. However:

> Under the modern statutory structure, the principle that there should be no appellate review of state court judgments by federal trial courts has two particularly notable statutory exceptions: First, a federal district court has original jurisdiction to entertain petitions for habeas corpus brought by state prisoners who

6

> claim that the state court has made an error of federal law. 28 U.S.C. § 2254. Second, a federal bankruptcy court has original jurisdiction under which it is "empowered to avoid state judgments, *see, e.g.*, 11 U.S.C. §§ 544, 547, 548, 549; to modify them, *see, e.g.*, 11 U.S.C. §§ 1129, 1325; and to discharge them, *see, e.g.*, 11 U.S.C. §§ 727, 1141, 1328." [*In re Gruntz*, 202 F.3d 1074, 1079 (9th Cir. 2000) (en banc)].

*Noel v. Hall*, 341 F.3d at 1155. Neither of those two exceptions applies to Linda's Motion to Dismiss Counts III, IV and V, since they are based on Linda's filing a false and overstated claim and judgment in Montana without giving him credit and offset for amounts paid.

The Debtor argues that *Rooker-Feldman* does not apply and this Court has jurisdiction because of alleged fraud on the court committed by Linda in the New Jersey divorce court. Debtor argues that, by asserting "as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *See, Noel v. Hall*, 341 F.3d at 1164. *Id.* At first glance the allegation of Linda's fraud on the court might appear to constitute an "allegedly illegal act or omission" in which case *Rooker-Feldman* would not bar jurisdiction. *Id.* Under closer review, however, any legal wrong is "an allegedly erroneous decision by a state court" in which case *Rooker-Feldman* bars subject matter jurisdiction in federal district court under controlling Ninth Circuit law. *Carmona*, 603 F.3d at 1050; *Noel v. Hall*, 341 F.3d at 1164.

It is clear to this Court that the only reason, if any, for any error in accounting of payments or credit of transfers of money from Edwin to Linda in the New Jersey divorce case is because Edwin refused to appear in the New Jersey state court and litigate his claims for an accounting, or to prove his claim of fraud on the court by Linda. Edwin refused to appear, post bond, or to comply with other orders of the New Jersey court, which proceeded in his absence to hear and decide the issues before it and, not surprisingly given Edwin's failure to appear and

7

prove his contentions in state court, entered judgment against him. The judgment was affirmed on appeal and, contrary to Edwin's contention, the judgment is final. Especially in light of Edwin's contempt and defiance in the New Jersey court, this Court finds that the *Rooker-Feldman* doctrine bars Edwin's Counts III, IV and V brought in this case by the loser in state court[7]. *Carmona*, 603 F.3d at 1050; *Noel v. Hall*, 341 F.3d at 1164.

Furthermore, to the extent *Rooker-Feldman* would not bar jurisdiction, an additional exception to federal jurisdiction known as the "domestic relations" exception exists, which must be taken into account since the underlying dispute between these parties arises from their divorce. The domestic relations exception covers "only a narrow range of domestic relations issues." *Marshall v. Marshall*, 547 U.S. 293, 298, 307-08, 126 S.Ct. 1735, 1741, 1746, 164 L.Ed.2d 480 (2006), citing *Ankenbrandt v. Richards*, 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). The Supreme Court clarified that "only 'divorce, alimony, and child custody decrees' remain outside federal jurisdictional bounds. [*Ankenbrandt*] at 701, 112 S.Ct. 2206 *Barber v. Barber*, 21 How. 582, 16 L.Ed. 226 (1859)]. While recognizing the 'special proficiency developed by state tribunals . . . in handling issues that arise in the granting of 'divorce, alimony, and child custody] decrees,' *id.*, at 704, 112 S.Ct. 2206, we viewed federal courts as equally equipped to deal with complaints alleging the commission of torts, *ibid.*" *Marshall*, 547 U.S. at 308, 126 S.Ct. at 1746.

The limited scope of the domestic relations exception might not apply under *Marshall*

---

[7]To allow Edwin to proceed in this Court to litigate Counts III, IV and V would have the effect of condoning, countenacing, and ultimately rewarding Edwin for his defiance and contempt in the New Jersey state court system. This the Court will not do, since it would encourage such tactics and conduct by other parties.

and *Ankenbrandt*, since those cases specifically viewed federal courts as equally equipped to deal with complaints alleging the commission of torts. *Marshall*, 547 U.S. at 308, 126 S.Ct. at 1746. On the other hand, the domestic relations exception recognizes the "special proficiency developed by state tribunals . . . in handling issues that arise in the granting of 'divorce, alimony, and child custody] decrees.'" *Marshall*, 547 U.S. at 308, 126 S.Ct. at 1746; *Ankenbrandt*, 504 U.S. at 704. Since Linda's claim unquestionably arose in the granting of the parties' divorce decree, the New Jersey divorce court has the special proficiency, and specific experience in dealing with the parties' divorce, which would weigh in favor of applying the domestic relations exception to federal court jurisdiction.

Further, although federal courts are equally equipped to deal with complaints alleging the commission of torts, *Marshall*, 547 U.S. at 308, 126 S.Ct. at 1746; *Ankenbrandt*, 504 U.S. at 704, the tort alleged by Edwin is not just a tort against himself, but rather he alleges fraud upon the New Jersey divorce court by Linda. It cannot be reasonably argued that this Court is equally equipped to deal with an alleged fraud on the New Jersey divorce court, as that court is itself[8]. The New Jersey court heard the divorce proceedings, reviewed the record, observed the testimony, and rendered a decision. Finally, the New Jersey court has a special interest in managing and protecting the integrity of proceedings before it, and in particular has a special interest in considering whether fraud upon the court was committed by parties appearing before it.

Returning to the *Rooker-Feldman* doctrine, it bars federal court jurisdiction over claims

---

[8]Since the presiding judge in the New Jersey divorce appears to have died, that possibility of bias against Edwin no longer exists.

9

"inextricably intertwined" with a state court judgment, and a claim is inextricably intertwined "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Fontana*, 307 F.3d at 992 (citing cases). If the New Jersey courts wrongly decided the issues of fraud on the court and Edwin's claim for an accounting, those claims were inextricably intertwined with the divorce, and any error must be assigned in large part to Edwin's failure to appear and comply with state court orders.

For these reasons this Court holds that it lacks jurisdiction under both the *Rooker-Feldman* doctrine and the "domestic relations exception" to federal court diversity jurisdiction.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above granting Linda's Motion to Dismiss Counts III, IV and V of the complaint.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana